**PETRA ENERGY, INC., and Asher Associates, Inc., Appellants (Petitioners),**

v.

**DEPARTMENT OF REVENUE, STATE OF WYOMING, Appellee (Respondent).**

No. 99–246.

Supreme Court of Wyoming.

June 12, 2000.

Representing Appellants: Nancy D. Freudenthal of Davis & Cannon, Cheyenne, Wyoming.

Representing Appellee: Rowena L. Heckert, Deputy Attorney General; Drake D. Hill*, Senior Assistant Attorney General; and Jay Jerde, Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY **, GOLDEN, and HILL, JJ.

MACY, Justice.

Appellants Petra Energy, Inc. and Asher Associates, Inc. petitioned the district court for a review of the State Board of Equalization's decision concluding that Appellee Department of Revenue had a valid lien against the appellants' oil and gas interests in Niobrara County. The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

We reverse.

## ISSUE

The appellants present a single issue for our review:

Does a lien for severance tax and accruing interest attach to and follow mineral leases and future production "by operation of law," without any steps necessary to properly perfect the lien for notice to bona fide purchasers?

## FACTS

Common Energy, Inc. owned mineral interests in an oil and gas well located in Niobrara County. It failed to properly pay its severance taxes for the 1991 tax year. In January 1993, the Department of Revenue filed a Certificate of Lien with the Niobrara County Clerk, claiming a lien in the amount of $56,387 for delinquent severance taxes, penalty, and interest against Common Energy's real and personal property. The Department of Revenue did not, however, include a legal description of the property in the Certificate of Lien, and, consequently, the county clerk did not record the lien against the tract of land in which the well was located.

Petra Energy purchased Common Energy's interest in the well in February 1994. Asher Associates operated the well for Petra Energy. Prior to purchasing the well, Petra Energy performed title examinations to determine whether there were outstanding liens or other encumbrances against the real property. The Department of Revenue's lien was not discovered during the title examinations.

Petra Energy subsequently learned of the lien, and it asked the Department of Revenue to release the lien against its property. The Department of Revenue refused, and the appellants appealed to the State Board of Equalization. The State Board of Equalization concluded that the Department of Revenue held a valid lien against Petra Energy's Niobrara County property for the unpaid severance taxes and the accrued interest. It determined, however, that the Department of Revenue was not authorized to impose a penalty against the appellants.

The appellants appealed to the district court, and that court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

* Order entered January 11, 2000, consenting to Drake D. Hill's withdrawal as counsel

** Retired June 2, 2000

## STANDARD OF REVIEW

 When cases are certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *Petroleum Inc. v. State ex rel. State Board of Equalization*, 983 P.2d 1237, 1239 (Wyo.1999); *Union Telephone Company, Inc. v. Wyoming Public Service Commission*, 907 P.2d 340, 341–42 (Wyo.1995). Wyo. Stat. Ann. § 16–3–114(c) (LEXIS 1999) governs judicial review of administrative decisions. W.R.A.P. 12.09(a); *Everheart v. S & L Industrial*, 957 P.2d 847, 851 (Wyo.1998).

 The issue presented in this case requires us to interpret various statutes. Statutory interpretation is a question of law. *Petroleum Inc.*, 983 P.2d at 1239; *Newton v. State ex rel. Wyoming Workers' Compensation Division*, 922 P.2d 863, 864 (Wyo.1996). This Court affirms an agency's conclusions of law when they are in accordance with the law. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors. *Weaver v. Cost Cutters*, 953 P.2d 851, 855 (Wyo.1998); *Gneiting v. State ex rel. Wyoming Workers' Compensation Division*, 897 P.2d 1306, 1308 (Wyo.1995).

## DISCUSSION

In their first argument, the appellants assert that the Department of Revenue did not have authority under Wyo. Stat. Ann. § 39–6–307(e) (Michie 1997) (repealed 1998) to claim a lien against their interests in the Niobrara County well. The Department of Revenue argues that it was authorized to claim the lien. We agree with the appellants.

Before its repeal in 1998, § 39–6–307(e) provided:

(e) Any person extracting valuable products subject to this article and any person owning an interest in the valuable products to the extent of their interest ownership are liable for the payment of the taxes imposed by this article together with any penalties and interest. The tax is a lien upon the interest of any owner and the interest of any person extracting any valuable deposit from and after the time they are extracted until the taxes are paid. The tax lien shall have preference over all liens except any valid mortgage or other liens of record filed or recorded prior to the date the tax became due.

 We have frequently stated our standard for interpreting statutes. This Court decides first whether the statute is clear or ambiguous. *Wyoming Department of Transportation v. Haglund*, 982 P.2d 699, 701 (Wyo.1999); *Lyles v. State ex rel. Division of Workers' Compensation*, 957 P.2d 843, 845 (Wyo.1998). This Court makes that determination as a matter of law. *Allied–Signal, Inc. v. Wyoming State Board of Equalization*, 813 P.2d 214, 220 (Wyo.1991); *see also Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1043 (Wyo.1993). If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. *Haglund*, 982 P.2d at 701; *Lyles*, 957 P.2d at 846. To effectuate the unambiguous language of a statute,

[w]e begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia.*

*State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994). If the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent. *Parker Land and Cattle Company*, 845 P.2d at 1044.

Although both sides assert that § 39–6–307(e)'s language was clear and unambiguous, they present differing opinions as to what its meaning was. The appellants claim that the lien authorized by the statute applied to the interests in the extracted minerals that gave rise to the severance tax liabili-

ty. The Department of Revenue argues that the lien created by § 39–6–307(e) applied to all the interests in the mineral estate and included interests in future production.

This Court discussed § 39–6–307(e) and the nature of severance tax liability in *BHP Petroleum Company, Inc. v. State,* 784 P.2d 621, 625–26 (Wyo.1989). The severance tax is a tax upon the present and continuing privilege of extracting minerals in this state. *BHP Petroleum Company, Inc.,* 784 P.2d at 626; *Belco Petroleum Corporation v. State Board of Equalization,* 587 P.2d 204, 210 (Wyo.1978). Severance tax liability arises upon removal of the mineral from the deposit. *BHP Petroleum Company, Inc.,* 784 P.2d at 626. The "lien liability follows the product from which production the taxable incident and liability arose." *Id.* Severance tax is a lien on the interests of the owners of any part of the produced mineral until the tax is paid. 784 P.2d at 627. The lessons of the *BHP Petroleum Company, Inc.* case, therefore, were: (1) the triggering factor for imposition of severance tax liability was the removal of the mineral from the deposit; and (2) the lien created by § 39–6–307(e) applied to the interests in the extracted minerals.

We revisited the *BHP Petroleum Company, Inc.* decision and our earlier interpretation of § 39–6–307(e) in *Preferred Energy Properties v. Wyoming State Board of Equalization,* 890 P.2d 1110 (Wyo.1995). This Court stated in that case: "The statute unambiguously imposes liability for the tax on two groups: any person who is extracting the valuable products and any person who owns any interest in the valuable products." *Preferred Energy Properties,* 890 P.2d at 1112. The tax remains as a lien upon the interests in the produced minerals until it is paid. *See id.*

The Department of Revenue maintains that, in § 39–6–307(e), the legislature intended to impose a lien upon any interest in any part of the mineral estate from the time the mineral was extracted until the tax was paid. The department argues that, if the legislature had intended for only the interests in the extracted products to be

subject to the lien created by § 39–6–307(e), it would not have also enacted Wyo. Stat. Ann. § 39–6–304(k) (Michie 1997) (repealed 1998). Before its repeal in 1998, that statutory provision provided: "The tax is a lien paramount and superior to any other lien except federal liens, on the gross product, or sale proceeds therefrom, of the mine or mining claim from and after the time the minerals are extracted until the taxes are paid." Section 39–6–304(k). The Department of Revenue continues its argument by stating that, if we were to adopt the interpretation of the statute championed by the appellants, § 39–6–304(k) would be rendered superfluous.

We believe that the legislature intended for § 39–6–307(e) and § 39–6–304(k) to work together to establish liability for severance taxes and the means for securing payment of the taxes. Section 39–6–307(e) delineated the persons who were responsible for paying the severance taxes and the interests that were subject to a lien for nonpayment of the taxes, while § 39–6–304(k) expressly established a severance tax lien against the gross product and the proceeds of the sale of the product. We do not believe, therefore, that, by construing § 39–6–307(e) to apply to only the interests in the extracted products rather than to all interests in the mineral estate, we are rendering either statutory provision superfluous. Instead, our interpretation makes the two provisions compatible.

Taking into consideration this Court's rulings in *BHP Petroleum Company, Inc.* and *Preferred Energy Properties* and the plain language of § 39–6–307(e), we conclude that the lien created by § 39–6–307(e) applied to only the interests in the extracted minerals that gave rise to the severance tax liability. It did not apply to all interests in the mineral estate and to future production from the same deposits.

The appellants' next argument pertains to perfection of a lien against the Niobrara County property. They maintain that, if the Department of Revenue wanted its lien to attach to the mining claim or real property and to follow the property upon conveyance, it was required to properly record the lien. The Department of Revenue argues that a lien arose against all interests in the mineral

estate the moment the minerals, which gave rise to the severance tax liability, were extracted and that the lien was automatically perfected without being recorded.

We have determined that the lien allowed by § 39–6–307(e) applied to only the interests in the extracted minerals. The appellants did not produce or own any interest in the minerals that were subject to the severance tax liability in this case. We do not, therefore, need to determine whether the Department of Revenue was required to perfect its § 39–6–307(e) lien by properly recording it in the Niobrara County Clerk's office.

 The Department of Revenue could have, of course, encumbered Common Energy's real property pursuant to the general lien statutes. *See, e.g.,* Wyo. Stat. Ann. §§ 29–1–101 & 29–1–301 (LEXIS 1999); *Wyoming Department of Revenue and Taxation–Excise Tax Division v. First Wyoming Bank, N.A.—Kemmerer,* 718 P.2d 31, 34–35 (Wyo.1986). In order to establish an effective lien under those statutes, however, the lienholder is required to follow the appropriate procedures in imposing and perfecting its lien. *Wyoming Department of Revenue and Taxation–Excise Tax Division,* 718 P.2d at 34–35. In general, liens must be properly recorded in order to establish their priority and to encumber the property upon conveyance. *Id.*

In this case, the Department of Revenue claimed a lien against "all real and personal property as indicated on the exhibits attached hereto owned by . . . COMMON ENERGY, INC." It did not, however, attach the exhibits containing the legal descriptions of the property owned by Common Energy. Without the legal descriptions, the county clerk could not properly record the lien against the real property that was subsequently transferred to Petra Energy. The Department of Revenue's lien did not, therefore, encumber the real property or mining claim which Common Energy transferred to Petra Energy.

Reversed.